1
2
3
4
5
6            **IN THE UNITED STATES DISTRICT COURT**
7            **FOR THE EASTERN DISTRICT OF CALIFORNIA**
8
9   Sherri Brasher,                          No. CV-16-01185-SMM
10            Plaintiff,                      **ORDER**
11  v.
12  AmeriGas Propane, Inc., et al.,
13            Defendants.
14

15        Pending before the Court is Defendant AmeriGas Propane, Inc.'s ("AmeriGas")

16  motion for summary judgment or, in the alternative, summary adjudication. (Docs. 23,

17  24[1].) Plaintiff Sherri Brasher ("Brasher") filed her opposition. (Doc. 29[2].) AmeriGas then

18  filed its reply in support. (Doc. 30[3].)[4] Discovery was completed on August 31, 2017, with

19  the exception of two depositions conducted in September 2017 with the Court's

20  permission. (Docs. 12, 20, 22.)

21  _____

22        [1] In support of AmeriGas's motion, AmeriGas included its statement of undisputed
    facts, the declaration of Zaher Lopez and its attachments, the declaration of Kelly
23  Buccino, the declaration of Kelly Lawler, the declaration of John Ruppert, the declaration
    of Jeffrey Gamache, and numerous other exhibits. (Docs. 25, 26.)
24        [2] In support of Brasher's opposition to AmeriGas's motion, Brasher included a
    separate statement of additional disputed facts, the declaration of Shannon Ellis, the
25  declaration of Brasher, the declaration of John Migliazzo, numerous other exhibits, and a
    response to AmeriGas's statement of undisputed facts. (Doc. 29.)
26        [3] In support of its reply, AmeriGas filed objections to Brasher's evidence (Doc.
    31), a reply to Brasher's separate statement of disputed facts (Doc. 32), and a response to
27  Brasher's separate statement of additional disputed facts (Doc. 33).
        [4] The request for oral argument is denied because the parties have had an adequate
28  opportunity to present their written arguments, and oral argument will not aid the Court's
    decision. See Lake at Las Vegas Investors Grp., Inc. v. Pacific Malibu Dev., 933 F.2d
    724, 729 (9th Cir. 1991).

# I.     RELEVANT FACTUAL BACKGROUND[5]

AmeriGas's motion for summary judgment requires this Court to view the facts in the light most favorable to Brasher, the opposing party. See Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014).

Sherri Brasher began her employment at AmeriGas as a Customer Service Representative ("CSR") on or around November 12, 2012, and became a full time CSR on or around February 1, 2015. (Doc. 32 at ¶ 1.) Brasher worked at AmeriGas's Oakhurst, California facility, except for a period of time between December 29, 2014 and May 4, 2015, when she worked at AmeriGas's Oxnard, California facility. (Id. at ¶ 2.) Brasher's direct supervisors at the Oakhurst facility were District General Managers Sam Deardeuff ("Deardeuff") and John Ruppert ("Ruppert"), and Assistant Area Director Joseph Hradetzky ("Hradetzky"). (Id. at ¶ 3.)[6]

As a CSR, Brasher's duties included posting payments, assisting drivers on their routes, ensuring preliminary trips were completed, responding to customer complaints and inquiries, creating new accounts, posting service, dispatching driver and service technicians, posting meter reads, and carrying out duties as required by the manager. (Doc. 33 at ¶ 2.)

Brasher received notification of her termination via email on February 24, 2016. (Doc. 32 at ¶ 79.) Brasher's termination was effective February 25, 2016. (Id.) According to AmeriGas, Brasher was fired for her unacceptable work performance and unprofessional conduct. (Id. at ¶ 78.) Brasher contends that AmeriGas terminated her on account of her gender, and retaliated against her for filing complaints of gender discrimination, sexual harassment, and retaliation. (See Doc. 1-1.)

An extensive factual record details the events leading up to Brasher's termination. (Docs. 32-33.) The Court has organized the record into six categories: (1) Brasher's

---

[5] Unless otherwise noted, the facts are not in dispute. For ease of reference, the Court cites to the factual record as set forth in Docs. 32 and 33.
[6] The Court considers this fact undisputed because Brasher does not dispute that Deardeuff, Ruppert, and Hradetzky were her direct supervisors at the Oakhurst facility (Doc. 32 at ¶ 3). See Fed. R. Civ. P. 56(e)(2).

performance evaluations, (2) warnings for misconduct and poor performance, (3) other instances of misconduct, (4) the decision to terminate Brasher, (5) complaints about Brasher by Brasher's coworkers, and (6) Brasher's complaints to management.

### 1. Brasher's performance evaluations

Brasher received three performance evaluations over the course of her employment at AmeriGas.

On her 2013 performance evaluation, Brasher earned a 2.9 out of 5 rating, meaning that she "met some objectives." (Doc. 32 at ¶ 12.) Brasher acknowledged during her deposition that she received and signed her 2013 performance evaluation, and did not submit any written response to it. (Id. at ¶ 13.)

On her 2014 performance evaluation, Brasher earned an overall 3 out of 5 rating, meaning "effective." (Id. at ¶ 14.) She earned an "above expectations" rating on customer focus; an "effective" rating on safety mindset, integrity and trustworthiness, and communication; and a "needs improvement" rating on meets commitments, and prioritizes and organizes. (Doc. 26-13 at 69-73.) Brasher acknowledged during her deposition that she received and signed her 2014 performance evaluation, and made no comments on the evaluation. (Doc. 32 at ¶ 14-15.)

On her 2015 performance evaluation, Brasher earned a 2 out of 5, meaning she "needs improvement." (Id. at ¶ 16.) She earned a "needs improvement" rating on safety mindset, communication, customer focus, integrity and trustworthiness; and an "effective" rating on meets commitments, and prioritizes and organizes. (Doc. 26-13 at 74-81.) Brasher acknowledged during her deposition that she received her 2015 evaluation and did not submit any complaint about it. (Doc. 32 at ¶ 17.)

### 2. Warnings for conduct and poor performance

From May 2015 to February 2016, Brasher received a number of verbal and written warnings regarding her conduct and performance:

**May 25, 2015 written warning**

On May 25, 2015, Deardeuff wrote to Brasher regarding the poor work

environment that she was causing with her behavior. (Id. at ¶ 18.) Per the memo, Deardeuff admonished Brasher for the "negative nature" of her communications with colleagues, advised Brasher that "all communications or actions of a negative nature must stop," and warned Brasher that "failure to do so [would] result in disciplinary action." (Id.) Brasher acknowledged during her deposition that she received and signed Deardeuff's memo. (Id. at ¶ 19.)

**May 29, 2015 written warning**

On May 29, 2015, Deardeuff issued Brasher a written warning due to her conduct and "overall performance." (Id. at ¶ 20.) Per the written warning, Brasher was "not meeting the Company professional expectations" and her "bad behavior and lack of respect towards [her] coworkers is unacceptable." (Id.) The written warning informed Brasher that "[e]ffective immediately and on a go-forward basis, any violation of Company policy and/or failure to improve and sustain performance at an acceptable level may result in further disciplinary action up to and including termination." (Id.) The written warning also noted that the issue had previously been discussed with Brasher. (Id.) Brasher acknowledged during her deposition that she received and signed the May 29, 2015 written warning. (Id. at ¶ 21.)

**December 18, 2015 Employee Disciplinary Report**

On December 18, 2015, under Regional Human Resources Manager (Western Division) Kelly Buccino's ("Buccino") guidance, Ruppert issued Brasher an Employee Disciplinary Report due to her conduct on three separate occasions (detailed below) in December 2015. (Id. at ¶ 32.) The report advised Brasher that she "needs to accept feedback in a positive manner and not react with emotional and loud outbursts. Sherri needs to conduct herself in a professional manner. Further outbursts and disruptive behavior will not be tolerated and will lead to further disciplinary action." (Id.) Brasher acknowledged during her deposition receiving the report. (Id. at ¶ 33.)

**i.      December 9, 2015 verbal warning**

Per the December 18, 2015 disciplinary report, Brasher was verbally counseled on

December 9, 2015 for "inappropriate behavior during [training] and reaction to the input being given by the trainers." (Id. at ¶ 34.) Per Ruppert's notes attached to the report: "Sherri left the office several times during the [] training. Suggestions and recommendations [] were met with resistance by Sherri. She realized that some of the things she was doing were not correct and rather than accept the feedback as positive [] she reacted by having an emotional breakdown. [] The trainers spent a lot of time helping to clean up [the] backlog of work."(Id.)

### ii.    December 17, 2015 verbal warning

Per the December 18, 2015 disciplinary report, Brasher was verbally counseled on December 17, 2015. (Id. at ¶ 35.) Per the report, Ruppert had a conversation with Brasher regarding "her frustration with the job and reactions to it." (Id.) He explained: "Sherri was at her desk acting in a very frustrated state. I ask[ed] if I could help and attempted to find out what was bothering her. She started yelling and stated that no one respected her and no one would listen to her. I explained that I was listening and would do my best to help improve what she felt were problems with communication in the office. I apologized if she felt that I had done anything to cause her to feel that way." (Id.)

### iii.    December 18, 2015 verbal warning

Per the December 18, 2015 disciplinary report, Brasher was verbally counseled on December 18, 2015 due to her poor communication skills. (Id. at ¶ 36.) Per the report, Brasher complained to Ruppert about the drivers not communicating with her. (Id.) Ruppert described his exchange with Brasher about the issue as follows: "I agreed that we all had opportunity to improve and explained to her that on many occasions I have observed her in the morning telling the drivers to leave her alone and not ask questions or disturb her while she was doing her work. At this point Sherri stormed out of my office yelling that she hated her job and would just come to work and not say anything to anyone. She yelled that she just wanted to get fired[.] I ask[ed] her to calm down and try to relax, she stated that she hates it when people tell her to calm down. This tirade went on for several minutes before she calmed down and regained composure." (Id.)

**January 27, 2016 written warning**

On January 27, 2016, Ruppert issued Brasher a written warning due to three separate incidents in January 2016. (Id. at ¶ 43.) The warning informed Brasher that: "[she] need[s] to conduct herself in a professional and appropriate manner at all times" "and treat all employees with respect." (Id.) "Sherri needs to control her behavior so not to create or allow situations to escalate to a level that creates a hostile environment in the office. Sherri must be able to work and communicate with all employees in the office including drivers and service techs with mutual respect and in a professional man[ner]." (Id.) Per the written warning, Brasher was also informed that "[f]urther incidents of conflict with drivers or other employees including verbal outbursts are unacceptable and will not be tolerated. Disciplinary action up to and including termination will result." (Id.) Plaintiff acknowledged during her deposition that she received this warning. (Id. at ¶ 44.)

### i.  January 14, 2016 incident

Per the January 27, 2016 written warning, Ed Smith ("Smith"), a driver for AmeriGas, reported to Ruppert that on January 14, 2016, Brasher "followed him to the parking lot where he was loading his truck with propane and she stood in front of the truck yelling at him about paperwork." (Id. at ¶ 45.) Brasher does not dispute the fact that she received this warning, but says she did not yell, she only raised her voice. (Id.)

### ii.  January 21, 2016 incident

Per the January 27, 2016 written warning, on January 21, 2016, Brasher disrupted Ruppert while he was in his office on the phone with a customer. (Id. at ¶ 46.) Per the written warning, Brasher disregarded that Ruppert was on the phone and slammed a door. (Id.)

### iii.  January 26, 2016 incident

Per the January 27, 2016 written warning, on January 26, 2016, Brasher "got into a heated argument with Ed Smith over his paper work. The confrontation took place because of Sherri's attitude and unprofessional man[ner]. When Ed tried to d[e]fuse the situation by walking away she followed him and continued to escalate the situation until

Ed [went to Ruppert's] office[.]" (Id. at  ¶ 47.) Per the written warning, Brasher exhibited "unprofessional and unacceptable attitude and behavior." (Id.) Brasher does not dispute the fact that she received this warning, but says the description of the incident "does not match [her] testimony." (Id.) Brasher does not explain how the description conflicts with her testimony. (Id.)

**February 18, 2016 written warning**

On February 18, 2016, under Buccino's guidance, Ruppert issued Brasher an Employee Disciplinary Report for poor work quality. (Id. at ¶ 57.) Per the report, Plaintiff was written up for falling behind 10 days on her work. (Id.)  The written warning also noted that "Sherri's lack of organization and focus on her primary responsibility is unacceptable," that her "attitude and behavior in the office are unacceptable," and that her "inability to communicate with drivers and service techs on a mutually respectful basis is unacceptable." (Id.) Per the report, Brasher was removed from the "growth champion" position. (Id.) Brasher acknowledged during her deposition that she received this warning. (Id. at ¶58.)

**3.     Other instances of misconduct**

**February 18, 2016 meeting**

Ruppert, Hradetzky, and Area Coordinator Kathryn Price ("Price") met with Brasher on February 18, 2016 to issue Brasher the February 18, 2016 written warning. (Id. at ¶ 63.)

The next day, in an email to Buccino, Price described Brasher as being very defensive during the meeting, "very loud and unreceptive to feedback," and that Brasher "[ ] could not accept any responsibility for the items addressed in the write up." (Id. at ¶ 64.) Price also described Brasher as "extremely loud." (Id.)

Ruppert described Basher's behavior during the meeting as highly unprofessional: "[s]he raised her voice at me, completely lost control of herself, did not allow me to speak, refused to take any constructive criticism, and ultimately stormed out of the office and slammed the door on her way out." (Id. at ¶ 65.)

Brasher herself admitted during her deposition that she was angry, agitated, and disruptive at the meeting, and that she yelled during the meeting, stormed out of the meeting, and had an outburst. (Id. at ¶ 66.)[7] Brasher was suspended due to her conduct at the February 18, 2016 meeting. (Id. at ¶67.)[8]

In an email to Buccino dated February 19, 2016, Ruppert suggested that, in light of Brasher's behavior at the February 18, 2016 meeting, they should change the locks and codes to the facility: "I believe it is in our best interest to change the lock and gate codes today. I am not sure what Sherri is thinking but I feel it is necessary to insure [sic] the safety of my staff and protect our office and customer records." (Id. at ¶ 68.) Ruppert's recommendation was implemented; AmeriGas changed the locks and gate codes to the Oakhurst facility. (Id. at ¶ 69.)

**February 19, 2016 conversation between Buccino and Brasher**

Buccino contacted Brasher on February 19, 2016 to discuss the outcome of her investigation into an inappropriate comment made to Brasher by Dustan Wenger ("Wenger"). (Id. at ¶ 70.) Buccino relayed an apology from Wenger to Brasher, but Brasher did not welcome the apology. (Id.) According to Buccino, Brasher had an outburst during the conversation, raised her voice, and cursed at her. (Id.)[9]

### 4.    The decision to terminate Brasher

On February 19, 2016, Buccino, Ruppert, and Hradetzky collaboratively decided to recommend Brasher's employment be terminated. (Id. at ¶ 71.) On February 21, 2016, Buccino drafted a written recommendation with supporting documentation to Kelly

---

[7] Although Brasher attempts to dispute this fact by claiming she did not have an outburst, she clearly testified to the fact. (See Doc. 32 at ¶ 66.) Therefore, the Court considers the fact undisputed. See Scott v. Harris, 550 U.S. 372, 380 (2007) (explaining that a court should not adopt a version of events clearly contradicted by the record for purpose of ruling on a motion for summary judgment).

[8] The Court considers undisputed the fact that Brasher was suspended for her conduct at the February 18, 2016 meeting because Brasher does not dispute her conduct at the meeting as described by Price and Ruppert (Doc. 32 at ¶¶ 64-64), admits that she got angry and had an outburst at the meeting (id. at ¶ 66), and admits in her separate statement of additional disputed facts that "she was suspended *because of her reaction to the write-up*" (Doc. 29-1 at ¶ 24) (emphasis added). See Scott, 550 U.S. at 380.

[9] The Court considers this fact undisputed because Brasher does not deny that Buccino relayed Wenger's apology to her, or that she had an outburst, raised her voice, and cursed at Buccino (Doc. 32 at ¶ 70). See Fed. R. Civ. P. 56(e)(2).

Lawler ("Lawler"), Director Field Human Resources, to terminate Brasher's employment for her ongoing unacceptable work performance and unprofessional conduct. (<u>Id.</u> at ¶ 75.) Lawler reviewed the recommendation and the supporting documentation, and agreed to terminate Brasher's employment. (<u>Id.</u> at ¶ 76.) Lawler delivered the termination decision to Brasher via email on February 24, 2016. (<u>Id.</u> at ¶ 79.)

### 5. Complaints about Brasher by Brasher's coworkers

Six of Brasher's coworkers complained about her conduct and/or poor performance:

**Shannon Ellis**

Shannon Ellis ("Ellis"), a former CSR at the Oakhurst facility, testified during her deposition that her working relationship with Brasher was "stressful" in part because Brasher had difficulty learning the job. (<u>Id.</u> at ¶ 84.) When Brasher was first hired, Ellis asked that she not train her because "[Brasher] wasn't learning the job." (<u>Id.</u>) Ellis testified that Brasher had difficulty processing work, struggled with organization, and that Ellis had complained to management about Brasher's inability to process her work, organize, and keep up with work. (<u>Id.</u>) When Brasher returned to the Oakhurst facility from Oxnard, Ellis testified that she emailed District General Manager Jeffrey Gamache ("Gamache") "questioning whether she was up to speed to come back." (<u>Id.</u>) Ellis also testified that she had to "pick up the slack" because of work Brasher did not complete. (<u>Id.</u>) Finally, Ellis testified that she was "sure there were many times that [she] was frustrated" with Brasher. (<u>Id.</u>)

**Debbie Haahr**

Brasher informed Buccino via email that CSR Debbie Haahr had complained to her District General Manager that she felt harassed by Brasher. (<u>Id.</u> at ¶ 85.)

**Julia Miranda**

SAP Implementation Trainer Julia Miranda ("Miranda") emailed Gamache and Deardeauff on June 19, 2015 reporting that Brasher "does not take criticism well," "does not like to use her books," and ignored Miranda's suggestions on ways to improve

performance. (Id. at ¶ 86.)

**Ed Smith**

Smith submitted an (undated) written complaint to Buccino about Brasher, complaining, among other things, that she created "an intimidating work environment," made "derogatory comments" to him, was "very condescending," and "repeatedly contradicted management." (Id. at ¶ 87.) Smith submitted another written complaint on January 26, 2016, in which he complained, among other things, that he was subjected to a hostile work environment and verbal harassment by Brasher. (Id. at ¶ 88.)

**Kathy Hatleli[10]**

On February 19, 2016, CSR Kathy Hatleli ("Hatleli") submitted a written complaint to Human Resources, complaining that working with Brasher was "unbearable." (Id. at ¶ 89.) In her complaint, Hatleli wrote that she considered quitting because of the "very unpleasant" office atmosphere Brasher created. (Id.)

**Ashley Grealy[11]**

On February 19, 2016, Oakhurst CSR Ashley Grealy ("Grealy") submitted a written complaint to Human Resources complaining that "[o]n a daily basis Sherri's attitude towards the drivers and other CSR is [] unprofessional and inappropriate in an office setting. She is angry and hostile about any small detail or question that is asked to her on a daily basis. She yells, is frustrated, gets angry, and argues and disagrees." (Id. at ¶ 90.)

**6.     Brasher's complaints to management**

Brasher herself made a number of complaints to management:

**Written complaint to Buccino – October 7, 2015**

Brasher unsuccessfully attempted to email Buccino on October 7, 2015 to

---

[10] The Court considers undisputed the fact that Hatleli complained about Brasher's behavior because there is no dispute about whether the complaint was submitted or its substance. See Fed. R. Civ. P. 56(e)(2).

[11] The Court considers undisputed the fact that Grealy complained about Brasher's behavior because there is no dispute about whether the complaint was submitted or its substance. See Fed. R. Civ. P. 56(e)(2). The Court notes that in disputing this fact, Brasher incorrectly refers to Grealy as Hatleli.

complain about sexual harassment and hostile work environment. (<u>Id.</u> at ¶¶ 23-25.) Buccino never received the email because Brasher sent it to an incorrect email address. (<u>Id.</u>) Other than the failed email attempt, Brasher never contacted Human Resources about the incident described in the October 7, 2015 email. (<u>Id.</u> at ¶ 26.) She also never shared a memorandum attached to the email with Buccino or any of her supervisors at AmeriGas. (<u>Id.</u> at ¶27.)[12]

**Verbal complaint to Hradetzky – September or October 2015**

In or about September/October 2015, Brasher reportedly made a verbal complaint to Hradetzky, complaining that Smith made her feel "uncomfortable" because of the way Smith looked her. (<u>Id.</u> at ¶ 28.) Hradetzky investigated the complaint by meeting with Brasher and Smith. (<u>Id.</u> at ¶ 29.) Hradetzky advised Smith to be mindful of how he looks at Brasher because she feels uncomfortable, and advised Brasher to contact Human Resources if the problem persisted. (<u>Id.</u>)[13]

**Written complaint to Buccino – December 18, 2015**

On December 18, 2015, Brasher emailed Buccino a complaint for "hostile work environment" and "sexual harassment." (<u>Id.</u> at ¶ 38.) Per the complaint, Brasher was being subjected to a hostile work environment because, among other things, management "talks over [her]," does "not listen or show any amount of respect to [her]," and "undermined [her] at ever[y] turn." (<u>Id.</u>) According to the complaint, Brasher was "sexually harassed" because, as a woman, she is "the only one being told [that she] MUST speak to MEN in the office differently." (<u>Id.</u>) Brasher also complained that she was overloaded and had been the only CSR in the office for over two months. (Doc. 33 at

---

[12] The Court considers this fact undisputed because Brasher does not dispute that she did not provide the memorandum to Buccino or any other supervisor. (Doc. 32 at ¶ 27.)

[13] The Court considers undisputed the fact that the complaint was investigated because Brasher presents no affirmative evidence that Hradetzky did not meet with Brasher and Smith, that he did not advise Smith to be mindful of how Smith looks at Brasher, or that he advised Brasher to contact Human Resources if the problem persisted. <u>See</u> Anderson v. Liberty Lobby, 477 U.S. 242, 256-257 (1986) (discrediting evidence is not a sufficient basis for drawing a contrary conclusion; instead, "the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment").

¶ 19.)

**Written complaint to Buccino – February 16, 2016**

On February 12, 2016, Brasher attempted to email Buccino a "sexual harassment" complaint, but sent it to the wrong email address. (Doc. 32 at ¶ 48.) Brasher corrected her mistake and sent the email to the correct email address on February 16, 2016. (Id. at ¶ 50.) In the email, Brasher complained that she felt "sexually harassed" by co-worker Wenger because Wenger once said to Brasher "don't wet your meatloaf," an obscene reference to a woman's vagina. (Id. at ¶ 51.)

**Verbal and written complaints – February 18, 2016**

As previously discussed, on February 18, 2016, Brasher was issued a written warning for falling behind 10 days on her work, her lack of organization and focus, her problematic attitude and behavior, and her poor communication skills. (Id. at ¶ 57.) As Ruppert began to issue Brasher the warning, Brasher verbally expressed that she believed the warning was retaliatory, and also wrote on the warning that it was "clear retalitation [sic]" for filing sexual harassment complaints in November and on February 5, 2016. (Doc. 33 at ¶ 24; Doc. 29-3 at 26.)

## II.    LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought." Fed. R. Civ. P. 56(a). A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, show "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Id.; see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material.  See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must

be "such that a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. See Celotex, 477 U.S. at 323. The party opposing summary judgment may not rest upon the mere allegations or denials of the party's pleadings, but must set forth "specific facts showing that there is a genuine issue for trial." See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963) (amended 2010)); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. Anderson, 477 U.S. at 247-48.

## III.    DISCUSSION

### A.    Brasher's First Cause of Action: Gender Discrimination

In her complaint, Brasher's first cause of action alleges that her discharge from AmeriGas was illegal discrimination based on her gender in violation of California Code § 12940(a) et seq., the California Fair Employment and Housing Act ("FEHA"). (Doc. 1-1 at 10-11.) AmeriGas moves for summary judgment on this claim. (Doc. 24.)

Because of the similarity between California and federal employment discrimination laws, California follows pertinent federal precedent when applying it to its own employment discrimination statutes. Guz v. Bechtel Nat'l, Inc., 8 P.3d 1089, 1113 (Cal. 2000). The Guz court recognized that California had adopted the three-stage burden-shifting McDonell Douglas test for trying claims of discrimination. Id.; see also Dawson v. Entek Int'l, 630 F.3d 928, 934 (9th Cir. 2011) (stating that when entertaining

- 13 -

motions for summary judgment regarding allegations of employment discrimination arising under state law, federal courts sitting in diversity must apply <u>McDonnell Douglas v. Green,</u> 411 U.S. 792 (1973), and its burden-shifting scheme as a federal procedural rule).

<u>McDonell Douglas</u> requires first that the employee establish a prima facie case of discrimination. <u>Id.</u> (further citations omitted). If the employee so establishes, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action. <u>Id.</u> (further citations omitted). If the employer so articulates, the employee must show that the articulated reason is pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." <u>Id.</u> (internal quotations and further citations omitted). In light of the similarities between the FEHA and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a), courts routinely rely on both California and federal case law. <u>See</u> <u>Brooks v. City of San Mateo</u>, 229 F.3d 917, 923 n.3 (9th Cir. 2000).

A prima facie case of discrimination under FEHA requires the plaintiff to show "'that (1) [she] was a member of a protected class, (2) [she] was qualified for the position [she] sought or was performing competently in the position [she] held, (3) [she] suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive.'" <u>Zeinali v. Raytheon</u>, 636 F.3d 544, 552 (9th Cir. 2011) (quoting <u>Guz</u>, 8 P.3d at 1113).

However, when an employer moves for summary judgment, the employer bears the initial burden. <u>See</u> <u>Lawler v. Montblanc North America, LLC</u>, 704 F.3d 1235, 1242 (9th Cir. 2013). The employer is required to show either that the employee cannot establish one of the elements of the prima facie case or that there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment. <u>Id.</u> If the employer meets its burden, the burden shifts and the employee must demonstrate either that the employer's showing was insufficient or that there was a triable issue of fact

material to the employer's showing. Id. At the summary judgment stage, the plaintiff does not have to prove that the employer's reason for firing her was a pretext for discrimination, but the plaintiff must introduce evidence sufficient to raise a genuine issue of material fact as to whether the employer's reason was pretextual. See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1282 (9th Cir. 2000).

Here, AmeriGas first argues Brasher cannot establish her prima facie case of discrimination in that she cannot show that she was performing competently in the position she held. (Doc. 24 at 23-24.) In support, AmeriGas cites Brasher's numerous verbal and written warnings, poor annual performance evaluations, complaints from other employees about Brasher, and Brasher's own admissions of yelling, storming out, slamming doors, and having outbursts. (Id.)

Brasher offers no direct response to AmeriGas's argument. (See Doc. 29 at 29-30.) It is clear from her response to the statement of undisputed facts (Doc. 29-6 at ¶ 78), her separate statement of additional disputed facts (Doc. 29-1 at ¶ 3), and the facts as set forth in her response in opposition (Doc. 29 at 8-9), however, that Brasher disputes AmeriGas's argument that she was not performing her job competently, and in support, cites her declaration. In her declaration, Brasher states that "throughout her employment at AmeriGas" she received "acceptable performance reviews and commendations for her work" and that she "received steady pay raises and ultimately earned a full-time position in December 2014." (Doc. 29-3 at 4.) Brasher does not cite to any evidence in support of these assertions. (See id.)

The Court finds that AmeriGas has shown that Brasher cannot establish that she was performing her job competently. The uncontroverted evidence shows that Brasher fell short of meeting expectations on two out of three annual performance reviews; received numerous verbal and written warnings for misconduct and poor performance; admitted to having outbursts, yelling, slamming doors, and storming out; and that six different AmeriGas employees complained about Brasher's conduct and performance. Brasher's conclusory, factually unsupported, and ultimately self-serving declaration fails

to create a genuine issue of material fact on the matter. See Nigro v. Sears, Roebuck and Co., 784 F.3d 495, 497-498 (9th Cir. 2015) ("[A] self-serving declaration does not always create a genuine issue of material fact for summary judgment. The district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence."); Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) ("[T]his court has refused to find a genuine issue where the only evidence presented is uncorroborated and self-serving testimony.") (internal quotations and citation omitted); F.T.C. v. Publishing Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.") (citations omitted).

Even if the Court presumes that Brasher relies on her 2014 performance evaluation and a single compliment from Ellis in support of her claims that she received "acceptable performance reviews" and "commendations for her work," the evaluation and compliment do not create a genuine issue of material fact on the matter. A genuine dispute about a material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 256. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Scott v. Harris, 550 U.S. 372, 380 (2007) (internal quotations and citation omitted). A mediocre performance evaluation and Ellis's compliment that Brasher was "outstanding" with customers do not support a reasonable inference that Brasher was performing her job competently, given Brasher's extensive and undisputed disciplinary and poor performance record; her undisputed low-scoring 2013 and 2015 performance evaluations; the undisputed fact that six different employees complained about Brasher's behavior; and the undisputed fact that Ellis complained to management that it was frustrating to work with Brasher, that her relationship with Brasher was "stressful," and that Brasher had difficulty learning the job and completing assigned tasks. Id. ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court

should not adopt that version of the facts for purpose of ruling on a motion for summary judgment.").

In sum, Brasher has not produced a triable issue of fact as to whether she was performing competently. Even if Brasher were able to establish this and other elements of her prima facie case, AmeriGas can articulate legitimate, nondiscriminatory reasons for terminating her.

To meet its burden under <u>McDonnell Douglas</u>, AmeriGas " 'must clearly set forth, through the introduction of admissible evidence,' reasons for its employment decision which, if believed by the trier of fact, would support a finding that the employment action was not a result of unlawful discrimination." <u>Noyes v. Kelly Servs.</u>, 488 F.3d 1163, 1169 (9th Cir. 2007) (quoting <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 255 (1981)).

Here, AmeriGas's legitimate, nondiscriminatory reasons for terminating Brasher were misconduct and poor performance. (Doc. 24 at 25-28.) In support, AmeriGas sets forth Brasher's extensive and undisputed disciplinary and poor performance record, undisputed low-scoring performance evaluations, complaints from other employees about Brasher, and Brasher's own admissions as to her egregious behavior. (<u>Id.</u>) This evidence supports a finding that Brasher's termination was not the result of unlawful discrimination. The burden now shifts to Brasher, who must introduce evidence sufficient to raise a genuine issue of material fact as to whether AmeriGas's reasons were a pretext for gender discrimination. <u>Coleman</u>, 232 F.3d at 1282.

"[A] plaintiff can prove pretext in two ways: (1) *indirectly*, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) *directly*, by showing that unlawful discrimination more likely motivated the employer." <u>Noyes</u>, 488 F.3d at 1170 (quoting <u>Chuang v. University of California Davis, Board of Trustees</u>, 225 F.3d 1115, 1127 (9th Cir. 2000)).

Brasher offers no direct response to AmeriGas's argument that it had legitimate,

nondiscriminatory reasons for terminating her. (See Doc. 29 at 30-31.) In her response to the statement of undisputed facts, however, Brasher contends that her 2013 and 2014 performance evaluations demonstrate pretext because they were issued years prior to her 2016 termination and are now being offered as justification for her termination. (Doc. 32 at ¶¶ 12-14.) Brasher's contention fails for two reasons. First, AmeriGas offered more than just Brasher's annual performance evaluations as justification for her termination: AmeriGas offered an extensive and undisputed record of misconduct and poor performance, complaints about Brasher from other employees, and Brasher's own admissions of her misconduct. Second, mere temporal distance between performance evaluations and termination, without more, is insufficient to raise a genuine issue of material fact as to whether the AmeriGas's offered reasons were pretextual. See Stegall v. Citagel Broadcasting Co., 350 F.3d 1061, 1070 (9th Cir. 2003) (noting that "timing, standing *alone*, may be insufficient to raise a genuine issue with respect to pretext"); see also Arteaga v. Brink's, Inc., 77 Cal. Rptr. 3d 654, 675 (Cal. Ct. App. 2008)) ("[T]emporal *proximity* alone is not sufficient to raise a triable issue as to pretext once the employer has offered evidence of a legitimate, nondiscriminatory reason for the termination.") (emphasis added). Accordingly, Brasher fails to raise a genuine issue of material fact as to whether AmeriGas's reasons were a pretext for gender discrimination.

In the end, AmeriGas has shown that Brasher cannot establish an essential element of her prima facie case, and Brasher has failed to demonstrate that there is a triable issue of fact on the element. Even if Brasher had carried her initial burden, AmeriGas has shown overwhelming evidence of legitimate, nondiscriminatory reasons for terminating Brasher, and Brasher has introduced no evidence to raise a genuine issue of material fact as to whether AmeriGas's reasons were a pretext for gender discrimination. For these reasons, the Court will grant summary judgment in favor of AmeriGas on Brasher's gender discrimination claim.

**B.     Brasher's Second Cause of Action: Retaliation**

In her complaint, Brasher's second cause of action alleges that she was subject to

adverse treatment, including termination, for filing complaints in violation of California Code § 12940(h). (Doc. 1-1 at 11-13.) AmeriGas moves for summary judgment on this claim. (Doc. 24.)

In California, FEHA makes it unlawful for an employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov't Code § 12940(h). In analyzing FEHA retaliation claims, the McDonnell Douglas burden-shifting test, discussed above, is applied. Walker v. City of Lakewood, 272 F.3d 1114, 1128 (9th Cir. 2001).

A prima facie case of retaliation under FEHA requires the plaintiff to show that "(1) [she] engaged in a protected activity; (2) the defendant subjected [her] to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." Id., citing Steiner v. Showboat Operating Co., 25 F.3d 1459, 1464 (9th Cir. 1994).

AmeriGas argues that Brasher cannot establish any element of her prima facie case of retaliation, beginning with protected activity. (Doc. 24 at 30.)

In Yanowitz v. L'Oreal USA, Inc., 116 P.3d 1123, 1130-31 (Cal. 2005), the Supreme Court of California explained:

> …an employee's conduct may constitute protected activity for purposes of the antiretaliation provision of the FEHA not only when the employee opposes conduct that ultimately is determined to be unlawfully discriminatory under the FEHA, but also when the employee opposes conduct that the employee reasonably and in good faith believes to be discriminatory, whether or not the challenged conduct is ultimately found to violate the FEHA.

Yanowitz, 116 P.3d at 1130-1131. Although an employee need not file a formal complaint or use legal terminology when opposing an unlawful employment practice, "complaints about personal grievances or vague or conclusory remarks that fail to put an employer on notice as to what conduct it should investigate" is insufficient to establish

protected activity. Id. at 1133-34; see also Day v. Sears Holdings Corp., 930 F.Supp.2d 1146, 1177-78 (C.D. Cal. 2013) (explaining that a complaint about unprofessional conduct is not protected activity; the employee must clearly complain about discriminatory treatment). In essence, "[t]he relevant question is not whether a formal accusation….is made, but whether the employee's communications to the employer sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner." Yanowitz, 116 P.3d at 1134.

Here, AmeriGas argues that Brasher cannot show that she was engaged in protected activity. (Doc. 24 at 30.) Specifically, AmeriGas argues that Brasher's October 7, 2015 complaint is not protected activity because the complaint was never received by AmeriGas. (Id.)

In response, Brasher contends that the following complaints constitute protected activities: her October 2015 written complaint of sexual harassment; her December 18, 2015 written complaint of hostile work environment and gender discrimination; her February 16, 2016 written complaint of sexual harassment and oral complaint of gender discrimination and being "pushed out"; her February 18, 2016 oral and written complaints of retaliation; the medical note placing her on stress leave; and her February 20, 2016 written complaint of discrimination and retaliation. (Doc. 29 at 19-20.)[14]

In reply, AmeriGas argues that the Court should disregard the medical note and the February 20, 2016 written complaint because they are outside the scope of the complaint, and citing to them is an improper attempt to create a question of fact. (Doc. 30 at 14-15.) The Court concurs; Brasher did not cite either as a protected activity in her complaint, therefore, the Court will disregard them. See Laabs v. City of Victorville, 78 Cal. Rptr. 3d 372, 381-82 (Cal. Ct. App. 2008) (explaining that, to create a genuine issue of material fact on a motion for summary judgment, the opposition cannot bring up new, unpleaded issues in her opposing papers).

---

[14] The Court notes an embarrassing proofreading error by Brasher's counsel in response to AmeriGas's retaliation argument: counsel refers to Brasher by (presumably) another client's name, and to AmeriGas by another defendant's name. (Doc. 29 at 19.)

The Court now turns to Brasher's remaining complaints.

**October 7, 2015 complaint**

As previously discussed, Buccino never received Brasher's October 7, 2015 written complaint because Brasher sent it to an incorrect email address and never corrected the error. (Doc. 32 at ¶¶ 23-25.) Because AmeriGas had no knowledge of Brasher's complaint, the complaint does not constitute protected activity. See Yanowitz, 116 P.3d at 1133 ("[A]n employee's unarticulated belief that an employer is engaging in discrimination will not suffice to establish protected conduct for the purpose of establishing a prima facie case of retaliation where there is no evidence that the employer knew that the employee's opposition was based upon a reasonable belief that the employer was engaging in discrimination.").

**December 18, 2015 complaint**

As previously discussed, on December 18, 2015, Brasher emailed Buccino complaining that she was being subjected to a hostile work environment because management "talks over [her]," does "not listen or show any amount of respect to [her]," and "undermined [her] at ever[y] turn"; and Smith screamed at her at her desk and made her feel uncomfortable. (Doc. 32 at ¶ 38.) Brasher also complained that she was being "sexually harassed" because, as a woman, she is "the only one being told [that she] MUST speak to MEN in the office differently." (Id.) Brasher also complained that she was overloaded and had been the only CSR in the office for over two months. (Doc. 33 at ¶ 19.)

The December 18, 2015 complaint does not constitute protected activity. Brasher's hostile work environment complaint does not protest discriminatory treatment; it merely complains of unprofessional conduct. See Day, 930 F.Supp.2d at 1177-78. As to the sexual harassment complaint, not only is it vague, but there is no evidence that Brasher was "the only one" being told to speak to men differently – Brasher admits that she did not know whether men in the office were told to speak to each other differently. (See Doc. at ¶ 39.) Finally, Brasher's complaints about being overworked and being the only

CSR in the office for over two months are not complaints about discriminatory treatment. See Day, 930 F.Supp.2d at 1177-78. For these reasons, the December 18, 2015 in its totality will not suffice to establish protected activity. See Yanowitz, 116 P.3d at 1130-31, 1134.

### February 16, 2016 complaints

As previously discussed, on February 16, 2016, Brasher emailed a complaint to Buccino that she felt "sexually harassed" because Wenger made an inappropriate comment to her on one occasion. (Doc. 32 at ¶ 51.) That same day, Brasher met with Buccino to discuss the complaint. (Id. at ¶ 53.)

Because Brasher could not have reasonably and in good faith believed that Wenger's single comment to her violated FEHA, her February 16, 2016 written and oral complaints are not protected activities. See Clark County School District v. Breeden, 532 U.S. 268, 270-71 (2001) (holding that no reasonable person could believe that one sexually explicit comment violated Title VII's "severe or pervasive" standard for sexual harassment such that a complaint over the comment would constitute a protected activity).[15]

### February 18, 2016 complaints

On February 18, 2016, Brasher was issued a written warning for falling behind 10 days on her work, her lack of organization and focus, her problematic attitude and behavior, and her poor communication skills. (Doc. 32 at ¶ 57.) As Ruppert began to issue Brasher the warning, Brasher verbally expressed that she believed the warning was retaliatory, and also wrote on the warning that it was "clear retalitation [sic]" for filing sexual harassment complaints in November and on February 5, 2016. (Doc. 33 at ¶ 24; Doc. 29-3 at 26.) Brasher does not specify the date or year she filed the November complaint, and the Court found no such complaint in the factual record. Also, the Court found no sexual harassment complaint filed on February 5, 2016 in the factual record.

_____

[15] "Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying [California employment discrimination] statutes." Guz, 8 P.3d at 1113.

The February 18, 2016 verbal complaint does not constitute a protected activity. Brasher's single word complaint that the warning was "retaliatory" is vague and conclusory; it protests no particular instance of discrimination. Thus, AmeriGas could not have understood the verbal complaint to be about an unlawful employment practice. See Yanowitz, 116 P.3d at 1133-34.

Similarly, the February 18, 2016 written complaint is not a protected activity. There is no evidence to support a reasonable and good faith belief that AmeriGas issued the warning in retaliation for the November and February 5, 2016 complaints because there is no evidence of either complaint in the record. Id. at 1130-31.

In the end, the Court finds that Brasher has failed to present sufficient evidence to satisfy the protected activity element of her prima facie case. Accordingly, summary judgment on this claim will be granted in favor of AmeriGas.

### C.     Brasher's Third Cause of Action: Declaratory Judgment

In Brasher's third and final cause of action she "seeks entry of a declaratory judgment against AmeriGas and in Plaintiff's favor, seeking to reaffirm Plaintiff's equal standing among her coworkers and the community, and to condemn discriminatory employment policies or practices." (Doc. 1-1 at ¶ 38.)

In her opposition, Brasher acknowledges that her right to declaratory relief is derivative of her FEHA claims. (Doc. 29 at 30.) Her underlying gender discrimination and retaliation claims having failed, so too does Brasher's claim for declaratory relief.

## IV.     CONCLUSION

Accordingly, based on the foregoing,

**IT IS HEREBY ORDERED** granting Defendant AmeriGas Propane, Inc.'s motion for summary judgment or, in the alternative, summary adjudication. (Doc. 24.)

//

//

//

//

1     **IT IS FURTHER ORDERED** dismissing Brasher's complaint against AmeriGas

2 with prejudice. The Clerk of Court shall enter judgment in favor of AmeriGas and

3 terminate this case.

4     Dated this 5th day of September, 2018.

Honorable Stephen M. McNamee
Senior United States District Judge